## ALTHOUSE *v.* McMILLAN.

1. CONTRACTS—PAROL EVIDENCE.
   The testimony of a party to a written contract of sale of certain heading, that the place of delivery was Liverpool, there being no doubtful phrases in the contract, is inadmissible.

2. SALE—DELIVERY TO PUBLIC CARRIER.
   Under a contract for the sale of heading at "$6.35 per 100 sets,

delivered, less New York rates of freight; terms net 30 days from date of shipment," the title passes to the purchaser upon delivery of the heading to a public carrier, and the transmission of bill of lading, with invoice attached, to the purchaser, in compliance with the terms of the contract.

Error to Saginaw; Snow, J.  Submitted December 4, 1902.  (Docket No. 195.)  Decided January 6, 1903.

Replevin by Clarence W. Althouse against John G. Mc-Millan and Charles F. Ford.  From a judgment for plaintiff on verdict directed by the court, defendants bring error.  Reversed.

*T. A. E. & J. C. Weadock*, for appellants.

*Weadock & Purcell*, for appellee.

Carpenter, J.  Plaintiff brought this action of replevin to recover a car load of heading which defendants had seized under a writ of attachment against one M. S. Daniels.  The heading, when attached, was in transit from Clare, Mich., to Liverpool, England, in pursuance of a contract of sale between said plaintiff and said Daniels.  The only question in this case is whether, under said contract, the title to said heading had or had not passed to Daniels.

The contract was made by correspondence.  Plaintiff agreed to sell and Daniels agreed to buy the heading at "$6.35 per 100 sets, delivered, less New York rates of freight.  *  *  *  Terms net thirty days from date of shipment."  The correspondence stated, "Rate to New York is 23 cents per cwt.," and that plaintiff should "send invoice, with original bill of lading attached, to this [Daniels'] office immediately after shipment."  When the heading was shipped, plaintiff obtained a bill of lading, and forwarded the same, with the invoice, to Daniels.  On the trial the plaintiff was permitted to testify that the language in the correspondence, "less New York rates of freight," meant that he should "pay the freight at the

rate of the New York rates, whatever it may be, and any excess of freight, or anything less than that, is a matter for his [Daniels'] consideration, and not mine. If you please, he might ship a car to Boston, which would take a two cent higher rate of freight than the New York rate. He would simply charge me with the rate at New York, and the excess he would have to pay; and if he was shipping to a point having a less rate of freight, I would have to pay the New York rate." He was also permitted to testify, under objection and exception, that the place of delivery was the place designated by the buyer, which in this case was Liverpool, England. The court below decided, as a matter of law, that the title to the goods had not passed, and directed a verdict for the plaintiff.

The testimony of the plaintiff that, under this contract, the place of delivery was Liverpool, was clearly incompetent. This was simply his construction of the contract. The admission of this testimony is not warranted by *Christopher* v. *Hechheimer*, 127 Mich. 451 (86 N. W. 959), and similar authorities, which hold that ambiguous phrases in contracts may be shown to have a definite and fixed meaning in trade. The testimony in question was not based upon any usage of trade.

Without this testimony, we have a contract of sale at "$6.35 per 100 sets of heading, delivered, less New York rates of freight; terms net thirty days from date of shipment." This language compels us to reach a conclusion contrary to that of the trial judge. It contains nothing to indicate that a delivery to the carrier was not a delivery to the purchaser, and this court has held that "delivery to a public carrier for transportation to the purchaser is, in the absence of circumstances showing a contrary agreement, usually held to be a delivery to the purchaser through his agent, the carrier." *Kuppenheimer* v. *Wertheimer*, 107 Mich. 77 (64 N. W. 952, 61 Am. St. Rep. 317). The same case is an authority negativing plaintiff's claim that, because the purchaser had a right to inspect and reject at New York if the heading did not

conform to description, the title did not pass on delivery to the carrier at Clare. This case is not, as contended by the plaintiff, governed by the principles of *Lingham* v. *Eggleston*, 27 Mich. 324, where it is stated:

"Where anything is to be done by the vendor, or by the mutual concurrence of both parties, for the purpose of ascertaining the price of the goods, as by weighing, testing, or measuring them, where the price is to depend upon the quantity or quality of the goods, the performance of these things is to be deemed presumptively a condition precedent to the transfer of the property, although the individual goods be ascertained, and they are in a state in which they may and ought to be accepted."

In the case at bar the vendee may reject if the goods do not conform to description, but nothing is "to be done by the vendor, or by the mutual concurrence of both parties, for the purpose of ascertaining the price of the goods."

Plaintiff relies upon the case of *Miller* v. *Lumber Co.*, 51 S. W. 615, decided by the court of appeals of Kentucky. This case was like the one at bar in this: That an attachment was levied upon a car load of staves in transit to M. S. Daniels, and the case turned upon the question of whether the title passed to Daniels at the beginning or at the end of the transit. The conclusion was reached that "the evidence [which is not set forth] shows that the staves were to be delivered to Daniels at Newark, New Jersey," the end of the transit. Without knowing the evidence which led the court to this conclusion, we can make no use of this authority.

But, in our judgment, this case is not determined by the language of the correspondence respecting delivery. The correspondence contemplated, and there actually was in this case in accordance therewith, a bill of lading procured, which, with the invoice attached, was immediately transmitted to the purchaser. This transfer of the bill of lading passed the title to the property in controversy. *Pease* v. *Gloahec*, L. R. 1 P. C. 219; *Hooper* v. *Robinson*, 98 U. S., at page 538; *Dodge* v. *Meyer*, 61 Cal. 405; *Western Union R. Co.* v. *Wagner*, 65 Ill. 197; Benj. Sales, § 399,

subd. 7; 1 Mechem, Sales, § 787, subd. 7.   It results from these authorities that the title to the goods in question was in Daniels, and therefore that the court should have directed a verdict for the defendants, and not for the plaintiff.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.