KIBLER v. CAPLIS.

1. SALES—OPTION—ACCEPTANCE—LETTER—PRESUMPTIONS.

Evidence tending to prove the sending of a telegram and letter accepting an option to purchase, which in due course should have arrived before the expiration of the option, examined, and *held*, to present a question for the jury as to when the telegram and letter were received.

2. SAME—ACCEPTANCE BY LETTER—TIME.

The mere sending of a telegram and letter of acceptance before the expiration of an option is not a sufficient acceptance, unless one of them is actually received by the sendee before expiration of the option.

3. SAME—PAYMENT—TIME—ORAL AGREEMENT.

Where a written option to purchase certain goods is unambiguous, and nothing is said therein about the time and manner of payment, payment and delivery are concurrent, and evidence that it was agreed by parol that a certain down payment should be made before delivery is inadmissible.

4. SAME.

Where an option to purchase hides required that they should be banked overnight, trimmed of meats, manure removed, and shaken over barrels and swept, and, when this was done, that they should be weighed and delivered, the buyers were not required to pay the price in advance of performance of such acts by the seller

5 SAME—MARKET PRICE—EVIDENCE—TRADE PAPER.

In an action for breach of a contract for the sale of certain hides in Detroit, a trade paper containing the market value of hides in Chicago, where, a witness testified, more similar hides were taken off than in any other city in the United States, was admissible.

Error to Wayne; Frazer, J. Submitted February 7, 1905. (Docket No. 98.) Decided May 12, 1905.

Assumpsit by Samuel J. Kibler and John W. Kibler, copartners as S. J. Kibler & Brother, against Michael Cap-

lis for breach of contract for the sale of certain hides. There was judgment for defendant, and plaintiffs bring error.  Reversed.

*Adolph Sloman (Edmund M. Sloman, of counsel), for appellants.*

*James H. Pound, for appellee.*

MOORE, C. J.  Plaintiffs sued to recover for breach of contract for the sale of a quantity of hides, for which defendant gave them an option reading:

"DETROIT, MICHIGAN, October 5, 1901.
"I this day give Samuel J. Kibler & Brother an option on my hides, at ten cents per pound flat; hides to be banked overnight, trimmed of meats, and manure to be removed.  Option to expire Tuesday noon, October 8, 1901. Hides to be shaken over barrels and swept.
"MICHAEL CAPLIS."

At the same time, and in consideration therefor, plaintiffs gave defendant an option for the same hides on the same terms, at 9¾ cents, flat, per pound.  Plaintiffs gave testimony tending to show that they sent from New Washington, Ohio, a telegram as follows:

"October 7, 1901.
"Mr. CAPLIS,
  "Care Caplis & Co.,
    "Detroit, Michigan:
"Will take your hides, as per your option on hand.
"SAMUEL J. KIBLER & BROTHER."

And on the same day a letter as follows:

"*Dear Sir:* We wired you today, accepting your hides as per price and option you gave us October 5, and which we now confirm, prices and conditions as follows: Price ten cents, flat; hides to be banked overnight, trimmed of meats, manure to be removed, hides to be shaken over barrels and swept.  Would advise later when we will commence to take up.  This is an extreme price and you have made a very good sale.
"Yours truly,
"SAMUEL J. KIBLER & BROTHER."

It was the claim of the plaintiffs that the defendant refused to deliver him the hides, and this suit was brought to recover the damages. It was tried before a jury, which returned a verdict for defendant. The case is brought here by writ of error.

The assignments of error are discussed under the following heads:

*First.* . Had plaintiffs accepted the option in time ?

*Second.* Was the sending of the telegram and letter a sufficient acceptance, whether received by the defendant or not ?

*Third.* Could defendant, by his testimony, vary the contract by showing that at the time the option was given there was an oral understanding that one thousand dollars was to be paid down on its acceptance ?

*Fourth.* Under the terms of this option, were plaintiffs required to pay the purchase price to secure the same in advance of the doing of the things called for by the option, and more particularly the ascertainment of the number of pounds from which the total of the purchase price could only be determined ?

*Fifth.* Could plaintiffs show the value of these hides by proof of the Chicago market if the Chicago market in a measure controlled the Detroit market ?

We will take up the assignments of error in the order presented by counsel:

1. It was the claim of plaintiffs that the telegram sent on the 7th of October would, in the regular course of business, reach defendant on the 7th. Except the evidence that the telegram was sent, and the presumptions arising therefrom, there was no evidence that it was delivered to the defendant. He testified that he never received it. It was also the claim of plaintiffs that the letter was mailed between 6 o'clock and 7 :15 o'clock on the afternoon of the 7th, and by due course of mail should have been received by the defendant by noon of the 8th. The defendant testified he did not receive it until later than noon of the 8th. In *People* v. *Hammond,* 132 Mich. 422, it was held that there is a presumption that those in charge of receiving and transmitting mail perform the duties intrusted to

them; that there is a presumption that when a telegram
has been delivered to a telegraph company, and accepted
by the operator for transmission, it is duly forwarded and
received by the addressee.    See, also, 1 Greenleaf on Evi-
dence (16th Ed.), p. 137.    In view of this presumption and
the testimony, a question of fact was presented as to when
the option was received.

2. Was the sending of the telegram and letter a suffi-
cient acceptance, whether received by the defendant or
not?    Plaintiffs claim it was, but cite no authorities in
support of the proposition.    If the sending of a letter from
New Washington, Ohio, before noon of the 8th would be
sufficient, would the sending of one from the State of
Washington by noon of the 8th be sufficient?    It is evident
the parties had in mind that the offer to sell would be good
only until noon of the 8th.    Unless actually notified by
that time of its acceptance, we do not think defendant
could be held.    See notes to *Litz* v. *Goosling,* 21 L. R.
A. 129 (93 Ky. 185).

3. The defendant was permitted to show by parol that,
at the time the option was given, it was agreed a down
payment of $1,000 should be made.    Plaintiffs denied
such an agreement was made.    The option is not ambig-
uous.    It is true, it is silent about the time and manner
of payment.    Where nothing is said about it, delivery
and payment are concurrent acts.    2 Mechem on Sales, §
1119.    If there was an agreement about the time and man-
ner of payment, it should have been put in the option.
The parties are presumed to have put their agreement in
writing.    The oral testimony was incompetent.    *McCray
Refrigerator, etc., Co.* v. *Woods & Zent,* 99 Mich. 269;
*Cohen* v. *Jackoboice,* 101 Mich. 409; *Grashaw* v. *Wil-
son,* 123 Mich. 368; *Mouat* v. *Montague,* 122 Mich. 334;
*Hallett* v *Gordon,* 122 Mich. 570, 571; *Althouse* v. *Mc-
Millan,* 132 Mich. 145.

4. By the terms of the option, the hides were to be
banked overnight, trimmed of meats, and manure to be
removed, and were to be shaken over barrels and swept.

When this was done they would be ready for weighing and delivery, and, as before stated, delivery and payment would be concurrent acts. See, also, 2 Mechem on Sales, § 1115.

5. Was it error to exclude a trade paper containing the market value of hides in Chicago? One of the witnesses testified:

"Chicago being the great butchering center, the class of hides such as the plaintiffs purchased from defendant are more taken off in Chicago than in any other city of the United States, perhaps in the world, and that is the market for that class of goods; that when they come here to purchase hides they are governed by the Chicago market."

We think this feature of the case is ruled by *Aulls* v. *Young*, 98 Mich. 231, and the cases cited therein, and that the testimony should have been admitted.

The case is reversed, and new trial ordered.

CARPENTER, McALVAY, GRANT, and BLAIR, JJ., concurred.