KEMPER-THOMAS CO. *v.* DEITZ.

1. PLEADING—SALES—INDEBITATUS COUNT—EVIDENCE.
    In an action in assumpsit upon *indebitatus* count for goods
    sold and delivered, the whole transaction is open to any
    proof showing, a right to recover money actually due as
    alleged, whether under a contract of sale as originally
    made, as modified, waived in any particular, or benefi-
    cially performed in part.

2. SAME—COUNTS—BILL OF PARTICULARS.
    Plaintiffs' count followed by a brief bill of particulars re-
    ferring to a written contract, stating what goods were
    sold and delivered to defendants at their request, when
    and how ordered, when delivered, and the amount claimed
    due, *held*, not a special count on a particular contract,
    but evidently intended to meet the suggestions upon that
    subject found in section 2, chap. 14, judicature act (sec-
    tion 12454, 3 Comp. Laws 1915), and Circuit Court Rule
    No. 22.

3. SALES—DELIVERY.
    Delivery to the carrier is delivery to the purchaser of mer-
    chandise, in the absence of an agreement to the contrary.

Error to Washtenaw; Sample, J. Submitted Octo-
ber 10, 1918. (Docket No. 27.) Decided December
27, 1918.

Assumpsit by The Kemper-Thomas Company
against Oswald Deitz and another, copartners as O.
Deitz & Son, for goods sold and delivered. Judgment
for defendants on a directed verdict. Plaintiff brings
error. Reversed.

*Arthur Brown,* for appellant.
*Cavanaugh & Burke,* for appellees.

STEERE, J. On January 19, 1916, plaintiff's trav-
eling salesman solicited a "Christmas goods" order
—————————————————————————————
See note in 22 L. R. A. 415.

from defendants for their next ensuing Christmas trade. After examination of his samples an order was given for 1,000 "frame purses," style 3551, amounting to $130. A form of order furnished by plaintiff's salesman was then filled out by him and signed "O. Deitz & Son," by defendant Oswald Deitz, who was given a copy. This order was also apparently signed by plaintiff, through P. O. Camburn, "Salesman No. 102" and read in part as follows:

"How to ship: Freight (on or about) Dec. 1st, * * * F. O. B. cars our factory, * * * We will ship goods as close to dates desired as possible, but we cannot bind ourselves to exact dates, except when specially ordered."

Plaintiff did not ship the goods within the time specified. On December 18, 1916, it wrote in reply to a letter from defendant as follows:

"CINCINNATI, OHIO, Dec. 18, 1916.
"MR. OSWALD DEITZ,
    "Ann Arbor, Mich.
    "*Dear Sir:*  We are in receipt of your letter of the 16th relative to your order for purses.
    "In reply beg to advise that these purses are being finished up today and will go forward to you immediately."

Defendants' letter of the 16th was not produced by plaintiff, but its counsel testified that Oswald Deitz told him he wrote plaintiff about that time, stating he bought the purses for his Christmas trade, and "if they had not sent the goods by freight so that he would be sure to get them at Christmas, he wanted them to send them by express." Defendant admitted writing such a letter. In his cross-examination he was asked about this letter and answered as follows:

"If they had not sent them by freight, they were to send them by express so that you could get them before Christmas.
    "*A.* Yes, to hurry them up."

On December 19, 1916, plaintiff delivered the goods to the express company at Cincinnati, Ohio, carriage prepaid, directed to defendants at Ann Arbor, Mich., where they did not arrive until December 29. Defendants refused to receive or accept them because too late for their Christmas trade and so advised plaintiff. Correspondence followed between the parties, in concluding which plaintiff wrote defendants on January 5, 1917:

"The chances are had we made a freight shipment, you would not have received them yet.

"We insist upon our pay as per contract."

The claim was then put in the hands of counsel and, payment being refused, this action followed.

Plaintiff's declaration is as follows:

"The plaintiff says:

"1. That it is a corporation organized and existing under the laws of the state of Ohio.

"2. That the defendants are copartners engaged in business in Ann Arbor, Michigan.

"3. That the defendants are indebted to the plaintiff in the sum of $130.41 for goods sold and delivered by the plaintiff to the defendants at their request, as follows:

"1000 frame purses, style 3551, ordered in writing on January 19, 1916, and delivered on December 18, 1916 ......................................$130.00
Freight on same ..............................    .41
                                          ———————
    Total  .................................. $130.41

"4. Whereas the plaintiff claims a judgment for the sum of $200."

Defendants pleaded the general issue and gave notice that the goods were ordered for their Christmas trade of 1916; that plaintiff neglected and failed to ship and deliver the purses ordered in accordance with the terms of its contract, but delayed delivery until after Christmas when the goods were of no value to

defendants who then and for that reason would not accept and "never have received the said goods."

Upon the trial objection was made by defendants' counsel to any testimony under plaintiff's declaration as to a subsequent modification of the contract declared upon, in relation to which no waiver of any of its terms is pleaded. Opportunity was given to amend the declaration, which plaintiff's counsel did not desire to do, and in reply to the court relative to plaintiff's claim under its declaration said, "We rest on the declaration we have."

On conclusion of the testimony each of the parties requested a directed verdict, and after argument the court directed a verdict for defendants.

The assigned errors of the court complained of are formulated in the brief of plaintiff's counsel as follows:

"1. It held that there was no waiver of the original time of delivery by reason of defendants' subsequent request for shipment.

"2. It held that the delay caused by the carrier was chargeable to the plaintiff, notwithstanding that it had made full and complete delivery to the defendants when it delivered to the carrier."

Defendants contend that all plaintiff's evidence as to subsequent waiver of its admitted breach of the contract was inadmissible under the declaration; that even under the evidence erroneously admitted there was no waiver and defendants' letter of December 16th, written after breach of the contract "to hurry them up," was at most but a waiver conditioned upon the goods being received by them before Christmas.

The written order introduced in evidence by plaintiff at the trial showed these goods were to be shipped on or about December 1st. The testimony showed they were shipped by express, prepaid, on December 19th, and plaintiff introduced evidence against objection showing they were so shipped pursuant to defendants'

letter of December 16th. Defendants contend this evidence was not admissible because waiver or modification of a contract declared upon cannot be shown unless pleaded.

Conceding this general rule as applied to a special count on a particular contract, plaintiff contends it was not required to and did not declare specially on any alleged contract; but declared generally and set up a cause of action under a common *indebitatus* count in assumpsit for goods sold and delivered, thus leaving the whole transaction open to proof.

Plaintiff's claimed cause of action is a money demand for the price of goods sold and delivered, necessarily involving a contract of sale as originally made or modified, but which can be recovered under the common counts in assumpsit without specially pleading the contract. So pleaded, the whole transaction is open to any proof showing a right to recover money actually due as alleged, whether under a contract of sale as originally made, as modified, waived in any particular or beneficially performed in part. *Allen* v. *McKibbin,* 5 Mich. 449; *Begole* v. *McKenzie,* 26 Mich. 470; *McGraw* v. *Sturgeon,* 29 Mich. 426; *Ladue* v. *Seymour,* 24 Wend. (N. Y.) 59; *Kerstetter* v. *Raymond,* 10 Ind. 199. In 2 Smith's Leading Cases, 34, it is said:

"If there has been a special contract which has been altered or deviated from in particulars, by common consent, general assumpsit will lie."

Clearly the gist of plaintiff's short count is *indebitatus assumpsit* "for goods sold and delivered by plaintiff to defendants at their request" (purely a common count), followed by what might be regarded as a brief bill of particulars, evidently intended to give in outline such information regarding the transaction as would reasonably inform defendants of the nature of the case they were called to defend, to meet the suggestions

upon that subject found in section 2, chap. 14 of the judicature act (3 Comp. Laws 1915, § 12454) and Circuit Court Rule No. 22.

This added information does not transform plaintiff's general *indebitatus* count into a special count on a particular contract. It states what goods were sold and delivered to defendants at their request, when and how ordered, when delivered, and the amount claimed due. No special contract under which the goods were ordered is set out. It was incumbent upon plaintiff to prove the facts stated, as it would have been any further facts in a bill of particulars had defendants seen fit to demand one, but the count as a pleading would remain the same, permitting other or further proofs which tended to establish an *indebitatus* liability under the common counts. There was no error in admitting the testimony objected to.

It is undisputed that defendants wrote plaintiff on December 16th to ship the goods by express if they had not been sent by freight, "to hurry them up;" that plaintiff on receipt of the letter promptly replied with assurances, and delivered the goods to the carrier designated the next day with transportation prepaid. The original order was for the goods F. O. B. plaintiff's factory in Cincinnati and no change was made in that particular. Nothing thereafter remained to be done by the vendor. By the usual time required for express shipment between Cincinnati and Ann Arbor the goods should have arrived at their destination within from 12 to 24 hours. The fault for delay in transporting to point of delivery was with the express company designated by defendants to receive the goods for them at Cincinnati.

"In general a delivery of goods to a common carrier, and *a fortiori* to one specially designated by the buyer, is a delivery to the buyer. * * * A common carrier is agent of the buyer for receiving the goods." * * * *Hobart* v. *Littlefield,* 13 R. I. 341.

The general rule is stated as follows in *Templeton* v. *Equitable Manfg. Co.,* 79 Ark. 456 (96 S. W. 188):

"If the goods are to be delivered to a carrier specially designated by the vendee, the carrier becomes the agent of the vendee, and delivery to it is delivery to the vendee; if the contract is silent as to the mode of delivery, then a delivery by the vendor to a common carrier in the usual and ordinary course of business constitutes delivery to the vendee; where no carrier is specified, and a choice is open to the shipper, the selection of any one in good faith in the due course of business, is sufficient. The effect of the delivery in proper manner to the carrier is to transfer the title and to fix the time and place when the title passes. Mechem on Sales, §§ 736, 739."

"Where goods are delivered by the vendor, in pursuance of an order, to a common carrier for delivery to the buyer, the delivery to the carrier passes the property, he being the agent of the vendee to receive it, and the delivery to him being equivalent to a delivery to the vendee." Benjamin on Sales (7th Am. Ed.), § 399.

The proofs contain nothing indicating an agreement that plaintiff should transport the goods to Ann Arbor, retaining title and control until it had delivered them direct to defendants there. It contracted to deliver F. O. B. cars at its factory in Cincinnati, only changed by defendants' letter directing that they be sent by express, "to hurry them up." On receipt of this instruction plaintiff delivered the goods at its factory point to the carrier defendants designated, with transportation prepaid to destination, in abundant time to reach Ann Arbor several days before Christmas according to the usual time of carriage by express between those points. Nothing in the original order or defendants' subsequent direction to ship by express indicates that delivery to the carrier was not a delivery to the purchaser.

That delivery to the carrier is delivery to the purchaser of merchandise in the absence of an agreement

to the contrary is the recognized rule in this State. *Althouse* v. *McMillan*, 132 Mich. 145; *Kuppenheimer* v. *Wertheimer*, 107 Mich. 77. In the latter case it is held that even the stipulated right of the purchaser to inspect the goods sent him by a common carrier before paying for them, does not change the rule. *Vide*, also, *Mee* v. *McNider*, 39 Hun (N. Y.), 345, 109 N. Y. 500.

Upon this record a verdict should have been directed for plaintiff. The judgment is therefore reversed, with costs, and a new trial granted.

OSTRANDER, C. J., and BIRD, MOORE, BROOKE, FELLOWS, STONE, and KUHN, JJ., concurred.