(No. 13955.—Judgment affirmed.)

H. N. MAFFEI, Defendant in Error, *vs.* LOUIS GINOCCHIO *et al.* Plaintiffs in Error.

*Opinion filed October 22, 1921.*

1. CONTRACTS—*when an importer. waives delay in shipment of goods.* Although a contract for the importation of nuts provides that they are to be shipped "about the middle of October," an acceptance of a portion of the order which was shipped on October 26 is a waiver of the delay in shipping the balance on October 30, as the contract must be repudiated *in toto* or not at all and there cannot be a partial repudiation by only one of the parties to the contract.

2. SAME—*when letter of credit must be construed with contract as to time of shipment.* A contract for the importation of nuts which provides for a shipment "about the middle of October" must be construed with the provisions of a letter of credit sent to the shipper a few days after the contract was drawn up, and a provision that the letter of credit is "to be in force until October 31" must be held to modify the contract so as to permit shipment of the nuts any time until October 31.

3. SALES—*when loss of goods in transit falls upon the purchaser.* By the common law and under the Uniform Sales act, when a contract covering the purchase of merchandise provides substantially for delivery by carrier and payment at the point of delivery and that all insurance is to be effected by the purchaser, the beneficial interest in the merchandise passes to the buyer upon delivery to the carrier and the risk of subsequent loss falls upon the buyer.

4. SAME—*when correct notice of time of shipment is not required for purpose of effecting insurance.* Paragraph 3 of section 46 of the Uniform Sales act, requiring notice to the purchaser

of the time of shipment of goods purchased, does not require that a purchaser be notified of the exact time of shipment where war conditions render such notice impossible, and where the contract of purchase and the correspondence with reference to the shipment provide that the insurance, including the war risk, shall be effected by the purchaser.

5. APPEALS AND ERRORS—*Appellate Court's judgment on mixed question of law and fact is binding.* The Appellate Court's judgment on a mixed question of law and fact is binding on a review of an action at law in the Supreme Court.

APPEAL from the Second Branch Appellate Court for the First District;—heard in that court on appeal from the Municipal Court of Chicago; the Hon. LEO J. DOYLE, Judge, presiding.

CULVER, ANDREWS & KING, for plaintiffs in error.

DARRELL S. BOYD, (FISHER, BOYDEN, KALES & BELL, of counsel,) for defendant in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

Ginocchio, Costa & Co., of Chicago, executed a contract through a New York agent, R. G. Berlingieri, with H. N. Maffei, of Naples, Italy, a dealer in nuts, for the shipment of 300 bags of No. 1 Sorrento walnuts and 300 bags of Mountain Naples walnuts. The Sorrento walnuts were shipped and received. The Mountain Naples walnuts were shipped on a later vessel, the Ancona, which was sunk by a submarine. The question here in litigation is whether the buyer or the seller should bear the loss of these last named nuts under the terms of the contract and the circumstances of the case. The cause was tried in the municipal court without a jury and a judgment rendered in favor of Ginocchio, Costa & Co., plaintiffs in error here. On appeal to the Appellate Court the judgment of the trial court was reversed and a judgment entered in the Appellate Court for $2545 in favor of defendant in error, and this writ has been sued out to review that judgment.

The parties entered into the contract here in question August 5, 1915. It provided that the terms should be "ninety days confirmed bankers' letter of credit," and shipment was "to be made about the middle of October, 1915, on a direct steamer to New York, in bond to Chicago." It further provided for "marine and war insurance to be covered by consignees," and that defendant in error was "not responsible for failure in shipping goods on account of shortage of tonnage or lack of steamers or other reasons beyond control." A cablegram offer and an acceptance were interchanged between the parties, and the original sales contract went forward from Chicago accompanied by letter of August 13, 1915, in which it was stated that letter of credit would be mailed direct to shipper. On August 14, 1915, the Continental and Commercial National Bank of Chicago issued a letter of credit authorizing defendant in error to draw "on Banca Commerciale Italiana, Naples, at ninety days' sight, for any sum or sums not exceeding in all lires 33,500, for account of Ginocchio, Costa & Co., Chicago, Illinois, against October shipment on a direct steamer to New York, in bond to Chicago, of"—describing the nuts before mentioned. This letter also provided that the Naples bank pay defendant in error for the nuts upon presentation of bills of lading issued to shipper's order and endorsed in blank, and further stated: "Insurance, including war risk, effected by the importers. * * * This credit to be in force until October 31, 1915." The letter written by plaintiffs in error to defendant in error accompanying the letter of credit also stated that they enclosed the letter of credit in payment of said 600 bags of nuts, and closed with the following statement: "We recommend to you to ship us nothing but the very best quality, and to make shipment as per contract and as soon as possible with a direct steamer to New York, in order that the merchandise would arrive here in good condition." The 300 bags of Sorrento walnuts were shipped on the steamship Patria on October 26, 1915,

and were received and accepted by plaintiffs in error. The 300 bags of Mountain Naples walnuts here in dispute were loaded on the steamship Ancona on October 30, 1915. An ocean bill of lading dated October 30 for this shipment was introduced in evidence as an exhibit. Defendant in error made a demand upon the Banca Commerciale Italiana in Naples on November 3 for payment for the shipment, and the Italian bank refused payment on the ground that the letter of credit was not confirmed and in any case was overdue. The reason the demand was not made prior to November 3 was, the testimony shows, that the seller did not obtain from the steamship company the shipping documents to deliver to the bank until after banking hours on Saturday, October 30, 1915, and that the next day was Sunday and the next two days regular holidays in Italy for banking purposes, and that the first opportunity to present the documents was November 3. On that date the defendant in error presented the letter of credit, together with the bill of lading properly endorsed, and the bank refused payment on the ground that the letter of credit authorized payment only to October 31. November 1 defendant in error cabled his New York agent that he had placed 300 bags of Mountain Naples walnuts on board the Ancona for plaintiffs in error, and the same day the New York agent wrote plaintiffs in error that the walnuts had been shipped on the steamship Ancona. On November 3 plaintiffs in error acknowledged receipt of this letter. When the Naples bank refused him payment for the nuts on November 3, defendant in error took the matter up by cable with plaintiffs in error, and on November 8 plaintiffs in error wrote the New York agent, stating that they had countermanded the letter of credit but that on that date they had again authorized payment of the letter. Upon ascertaining that the Ancona had been torpedoed and sunk, and payment not having been made on the letter of credit, the bills of lading were forwarded to plaintiffs in error and payment demanded. The evidence

tends to show that on account of the war troubles the time vessels would sail, the number of them and the available cargo space were so uncertain that no one could tell whether a vessel would sail on the date scheduled or at another date or at all, or that a particular boat would carry the merchandise even though it did sail at the appointed time, because there was a great shortage of shipping space. On November 8 Berlingieri, the New York agent of defendant in error, wired to plaintiffs in error confirming the fact of the shipment and asking for an extension of the letter of credit, which request was complied with, plaintiffs in error giving such directions to its bank and advising Berlingieri that they had done so. Plaintiffs in error had not procured insurance, and on making inquiry about the Ancona learned that it had been sunk November 7, and thereafter countermanded the prior order and canceled the letter of credit.

It is argued by defendant in error that the letter of credit plainly stated that it was to be in force until October 31, and having been enclosed by plaintiffs in error in their own letter was a modification of the contract as to the shipment being made "about the middle of October," while plaintiffs in error argue that as the last named shipment of nuts was not made until October 30, long after the time the nuts should have been loaded, therefore they were not obliged to accept them. True it is, by the contract of August 5 the nuts were to be shipped "about the middle of October," but it is also manifest that on August 16 plaintiffs in error wrote defendant in error a letter in which they enclosed the letter of credit from the Chicago bank to the Naples bank, the letter of credit reading in part: "This credit to be in force until October 31, 1915." Counsel for plaintiffs in error argue that this provision only extended the time within which payment might be made but did not extend the time of carrying out the contract. With this we cannot agree. It is clear that the Naples bank would have paid the· letter of credit upon presentation to it of a proper bill of

lading up to October 31, without regard to when the nuts were actually placed on the vessel. Furthermore, the shipment of the Sorrento nuts was made several days after the middle of October, 1915, and they were accepted and paid for by plaintiffs in error. There can be no question that plaintiffs in error by the acceptance of this first shipment showed clearly that they were not insisting on the nuts being shipped technically by the middle of October. If the terms of the original contract of August 5 are to be strictly construed as requiring shipment not later than "about the middle of October," it is obvious that the plaintiffs in error waived the delay and cannot now object that the shipment was not made until after the middle of October. The contract must be repudiated *in toto* or not at all. There cannot be a partial repudiation by the act of only one of the parties. *(Blackburn* v. *Reilly,* 47 N. J. L. 290; 2 Mechem on Sales, sec. 1398; *Wolf* v. *Dietzsch,* 75 Ill. 205; *Sturges* v. *American Separator Co.* 142 N. Y. Supp. 697.) In our judgment the original contract must be construed, in the light of this record, along with the letter of plaintiffs in error accompanying the letter of credit, and therefore the contract was so modified as to permit shipment of the nuts any time until October 31; and furthermore, the provision of the contract as to the shipment being made by the middle of October was clearly waived by the acceptance of the first shipment, made several days after the middle of October.

Plaintiffs in error further argue that the judgment of the trial court should be upheld for the reason that the title to the nuts never vested in them because the bill of lading was not delivered to them, and that in order to pass the title the bill of lading should have been properly endorsed and delivered; that since this was not done plaintiffs in error did not own the nuts at the time the boat was sunk, and therefore the loss is that of defendant in error. Under the common law, when the contract of sale covering the purchase price of merchandise provided substantially for deliv-

ery by carrier and payment at the point of delivery and all
insurance to be effected by the purchaser, then the beneficial
interest in the merchandise passed to the buyer upon delivery
of the merchandise to the carrier and the risk of subsequent
loss fell upon the buyer. *(Mee* v. *McNider,* 109 N. Y. 500;
*Stafford & Bro.* v. *Walter & Skelton,* 67 Ill. 83; *Wheel-
house* v. *Parr,* 141 Mass. 593.) This rule has been substan-
tially formulated in the Uniform Sales act adopted in this
State, in paragraph 2 of rule 4 of section 19 of that act.
(Hurd's Stat. 1917, p. 2601.) Paragraph *(a)* of section
22 of that act provides: "Where delivery of the goods has
been made to the buyer, or to a bailee for the buyer, in pur-
suance of the contract and the property in the goods has
been retained by the seller merely to secure performance by
the buyer of his obligations under the contract, the goods
are at the buyer's risk from the time of such delivery."
(Ibid. p. 2602.) Paragraph 2 of section 20 of the act also
provides: "Where goods are shipped, and by the bill of
lading the goods are deliverable to the seller or his agent,
or to the order of the seller or of his agent, the seller there-
by reserves the property in the goods. But if, except for
the form of the bill of lading, the property would have
passed to the buyer on shipment of the goods, the seller's
property in the goods shall be deemed to be only for
the purpose of securing performance by the buyer of his
obligations under the contract." The Appellate Court so
held in its opinion, and we see no reason to reach a dif-
ferent conclusion. If we did, this question being at least a
mixed one of law and fact, the judgment of the Appellate
Court on this question would be binding on this court.
*(Harrison* v. *Thackaberry,* 248 Ill. 512.) It is quite clear
from the record that it was the intention of both parties
that the bill of lading was not to be delivered up by defend-
ant in error to the Naples bank except upon payment for
the nuts, and it is also clear that the bank would have paid
defendant in error if the bill of lading and letter of credit

had been presented before the closing of the bank on October 30. It would seem, therefore, to follow that the nuts were at the buyer's risk at the time the boat was sunk, and that plaintiffs in error must pay for them unless they are excused, as they claim they are, by the defendant in error's failure to notify them of the date the ship was to sail, so as to enable them to effect war and marine insurance.

Counsel for plaintiffs in error cite in support of their contention paragraph 3 of section 46 of the Uniform Sales act, which reads: "Unless otherwise agreed, where goods are sent by the seller to the buyer under circumstances in which the seller knows or ought to know that it is usual to insure, the seller must give such notice to the buyer as may enable him to insure them during their transit, and, if the seller fails to do so, the goods shall be deemed to be at his risk during such transit." The argument of counsel for plaintiffs in error is that on November 1 defendant in error notified plaintiffs in error the shipment was to be made on the steamship Ancona, sailing from Naples on November 9, and the boat having sailed on November 6, the notice was therefore wrong and misled plaintiffs in error; that they attempted to effect insurance on November 9 and were advised on November 10 by their agent that it was too late to effect insurance, for the reason that prior to that time the boat had been sunk.

It appears from the record that there was great uncertainty in shipping occasioned by the war and that reliance could not absolutely be placed on any information as to when the boat would sail on which the nuts would be shipped. Furthermore, we do not think, under the contract and the correspondence with reference to shipping the nuts, that defendant in error was required to notify plaintiffs in error of the delivery of the nuts to the steamship company for the purpose of effecting insurance, as the contract of August 5 stated in terms, "marine and war insurance to be covered by consignees," and the letter of credit of August 14

expressly stated, "insurance, including war risk, effected by the importers." In view of the contract provision on this point and with confirmation of the letter of credit we do not see how it can be held that plaintiffs in error were in any way misled by the failure to give accurate notice as to the time when the nuts were to be shipped. It seems clear that it was otherwise agreed in the contract as to the insurance not being taken out by defendant in error but that the goods were to be shipped at the risk of the purchasers. The purchasers knew that the contract provided that they were insuring the nuts, and it would certainly be inconsistent with their argument to hold that the contract was complete and had never been changed and to assume that the nuts were not to be shipped until a later date and that the insurance should be effected later. While the letter of credit erroneously stated that insurance had been effected by plaintiffs in error, this erroneous statement was of a character to mislead defendant in error and not plaintiffs in error, as it must be assumed they knew the contents of the letter of credit they mailed with their own letter. It must therefore be held that plaintiffs in error cannot be relieved because of the want of correct notice as to the time of shipment.

On the question of damages, the value of the lire was a matter of agreement and stipulation between the parties. It is conceded by defendant in error that an examination of the record shows there was an error of calculation as to the valuation of the lire at the time the judgment of the Appellate Court was entered, and on this account the defendant in error consents to a *remittitur* being entered of $423.66 from the Appellate Court's judgment. With the deduction of this amount from the judgment of the Appellate Court that judgment will be affirmed.          *Judgment affirmed.*