(No. 24384.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, *vs.* THE WESTERN PICTURE FRAME COMPANY, Appellee.

*Opinion filed February 16, 1938—Rehearing denied April 6, 1938.*

Otto Kerner, Attorney General, (Earl B. Dickerson, of counsel,) for appellant.

Harry E. Kopald, for appellee.

Mr. Justice Orr delivered the opinion of the court:

The State of Illinois filed suit in the municipal court of Chicago, against the Western Picture Frame Company, an Illinois corporation, for a balance due on a contract for the sale of furniture made by prisoners at the Illinois State Penitentiary. The case was heard without a jury and judgment was entered by the court in favor of defendant. The State of Illinois has a direct monetary interest in the outcome of the suit, and therefore the appeal comes directly to this court. Ill. Rev. Stat. 1937, chap. 110, par. 199, p. 2408.

During the early part of 1929, representatives of defendant visited the warehouse at the penitentiary and were shown a designated lot of furniture which was completed except for upholstering and finishing. On March 26, 1929, defendant submitted a memorandum to the Department of Public Welfare, stating that it agreed to purchase "a certain lot of fibre and miscellaneous furniture, now on hand at the Stateville Prison" and "agreed that price covering various items be taken from standard price list of the State of Illinois, on a basis of 50% of each dollar value as listed." The Department of Public Welfare agreed to "match up various sets shown, supplying chairs and rockers to complete sets where a surplus of settees may now exist." Pursuant to this memorandum, defendant presented a specific

proposal enumerating the items to be purchased and prices therefor. This proposal was accepted by both parties and a deposit of $5000, to be applied on purchase price, was made by defendant. Shortly thereafter, representatives of defendant again visited the warehouse—this time accompanied by agents of Stern & Company, a Philadelphia concern, to whom the furniture was resold by defendant. Pursuant to defendant's instructions, shipments of furniture were made to Stern & Company, f.o.b. Joliet, beginning on May 20, 1929, and continuing until October 18, 1929. In August of that year, Emil Reinhold, an officer of defendant company, visited the warehouse of Stern & Company, in Philadelphia, where he saw all of the furniture shipped up to that time. Upon his return to Chicago, Reinhold notified the Department of Public Welfare that the furniture "wouldn't stand up"—that it was "wobbly"—and requested that the shipments already made be replaced with good merchandise. This, he was informed, was impossible because the furniture shown him at Stateville was the only lot available. Later in the year, Reinhold again went to Philadelphia to inspect the final shipments and found them no different from the first lot. Difficulties arose between Stern & Company and defendant over the condition of the furniture and the latter finally agreed that Stern & Company might keep a part of the furniture for an agreed price of $3000; the remaining pieces were sent to an auction house by defendant where they were presumably sold. The Department of Public Welfare was not a party to these various transactions, but made repeated efforts to secure payment from defendant of the balance of $7288.87 on the contract. In these efforts its was unsuccessful. The only payment made by defendant was the down payment of $5000, despite the fact that the contract provided for "balance to be paid on receipt of bill of lading, less 2%."

It cannot be questioned that there was a completed sale of the furniture by plaintiff to defendant. Title to the

goods passed to defendant when they were delivered unconditionally to the carrier, f.o.b. Joliet, freight prepaid, if it had not already passed when the goods were put into a deliverable state. (Ill. Rev. Stat. 1937, chap. 121½, pars. 19 (2), 19 (4); *Maffei* v. *Ginocchio,* 299 Ill. 254.) The principal issue here is what warranties, if any, existed under the contract. Defendant contends that because its officers inspected only a few of the articles stored in the warehouse, there was a sale by sample and that under section 16 of the Uniform Sales act (Ill. Rev. Stat. 1937, chap. 121½, par. 16) "there is an implied warranty that the bulk shall correspond with the sample in quality" and "that the goods shall be free from any defect rendering them unmerchantable which would not be apparent on reasonable examination of the sample." In our judgment this contention is untenable. It appears from the record that representatives of defendant were conducted through the warehouse before the sale was consummated. They had an opportunity to inspect all the furniture and it has not been shown that the pieces which they saw were not representative or that there was fraudulent concealment of the true condition of the remainder. Under these circumstances, there was no sale by sample within the meaning of the Uniform Sales act. A clear distinction between sales by sample and sales of the character shown in this case is to be found in *Henry & Co.* v. *Talcott,* 175 N. Y. 385, 67 N. E. 617. The Court of Appeals of New York in that case said: "The chief reason for exempting sales by sample from the cardinal rule of *caveat emptor* is that the buyer has no chance to protect himself by an examination of the commodity sold. When the goods are in the presence of the parties at the time of the sale, and an adequate examination can be made, even if it is inconvenient or difficult, according to the weight of authority the sale is not to be regarded as made by sample, in the absence of an express agreement to that effect. Parties can make their own bargains; * * *

but when nothing is said or written upon the subject, and the buyer has ample opportunity to examine and inspect for himself  *   *   *   there is no warranty, even if samples are exhibited by the seller, because the parties stand upon an equal footing," etc.

No implied warranty of merchantability arose from the fact that plaintiff knew or should have known that the goods were to be resold by defendant. Defendant did not rely upon plaintiff's skill or judgment in choosing the articles described in the contract and it did not purchase the goods by description. Thus, it is unable to qualify under subsections 1 or 2 of section 15 of the Uniform Sales act. (Ill. Rev. Stat. 1937, chap. 121½, par. 15.) In that event, under the first paragraph of section 15, "there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale" and the rule of *caveat emptor* applies with all its force. (55 Corpus Juris, pp. 758, 762.) Representatives of defendant visited the warehouse and could have selected any articles they wanted. Instead, they chose to purchase the whole lot after inspecting a few typical pieces. Whether subsequent events turned the transaction into one less favorable than they anticipated is beside the point and is no defense in a suit for the balance due upon a contract honestly made.

In view of the fact that we hold that no warranty of merchantability can be implied in this sale, it is unnecessary for us to pass upon plaintiff's contentions that defendant waived its right to set up a breach of warranty, or that an account stated existed between them.

The judgment of the municipal court of Chicago is reversed and the cause is remanded to that court, with directions to enter a judgment in favor of plaintiff.

*Reversed and remanded, with directions.*