POWELL *v.* ALDRIDGE *et al.*

(Division A. October 6, 1947.)

[32 So. (2d) 146. No. 36506.]

**Hardy Lott**, of Greenwood, for appellant.

**Bell & McBee**, of Greenwood, for appellees.

Argued orally by **Hardy Lott**, for appellant, and by **R. C. McBee**, for appellees.

**Roberds, J.**, delivered the opinion of the court.

Appellees, Jack P. Aldridge, Sr., and Jack P. Aldridge, Jr., doing a wholesale business as the Aldridge Company, a partnership, located at Greenwood, Mississippi, ordered from appellant Powell, located at Griffin, Georgia, a

quantity of merchandise to be shipped from Griffin to Greenwood. The merchandise was duly shipped by Powell but was unduly delayed in transportation, and the Aldridge Company refused to accept it upon its arrival at Greenwood. Powell sued Aldridge for the purchase price of the goods, $618.75, plus $10.06 prepayment of freight by Powell, and interest on said sums. The case was decided by the lower court on an agreed statement of facts, trial by jury being waived. That court rendered judgment in favor of Aldridge, from which Powell appeals here.

The case turns upon whether or not the mode of transportation of the merchandise adopted by Powell was authorized by the contract of purchase. The question arises under this state of facts: the goods were purchased on open account to be shipped free on board at Griffin, the transportation charges to be paid by Aldridge. The stipulation of facts recites: "There was no agreement between plaintiff and defendants as to the manner or means by which said merchandise should be shipped from plaintiff in Georgia to defendants at Greenwood, Mississippi, and the defendants made no request that shipment be made by any particular carrier or class of carrier, that being left to the discretion of plaintiff."

Powell investigated as to the most economical and quickest method of transportation. He ascertained that transportation by motor freight would be considerably less than by express. He conferred with the Georgia Highway Express, Inc., operators of motor freight vehicles, and the Railway Express Agency, and was informed that the quickest and best method of transportation would be by motor truck from Griffin to Durant, and thence by railway express from Durant to Greenwood. The Georgia Highway Express, Inc. was not operating between Durant and Greenwood. However, another motor truck line was operating between those points but the Georgia Highway Express did not know that and informed Powell no such motor freight line was

so operating. Powell 'delivered the merchandise ₁ to said Highway Express at Griffin on November 20th, to be thus transported to Greenwood. That company issued a bill of lading for the goods to be delivered to the Railway Express Agency at Durant, which bill of lading contains this notation: ''Please forward to Aldridge Company, Greenwood, Mississippi.'' Powell prepaid the freight charges, $10.06, from Griffin to Durant. On the day of shipment Powell wrote the Railway Express Agency at Durant informing it of the shipment of goods over the line of the Highway Motor Express, enclosing a copy of the bill of lading, and also enclosing labels addressed to the Aldridge Company, Greenwood, Mississippi, to be placed upon the shipment of merchandise by the Railway Express Agency at Durant when it received the goods from the motor freight line. Powell on the same day mailed to Aldridge an invoice for the purchase price of the goods, setting out the terms of payment, which invoice included the $10.06 prepayment of freight by Powell, and which showed shipment by truck line to Durant, thence by railway express to Greenwood, and also wrote Aldridge a letter explaining the manner and mode of shipment of the merchandise and the reasons therefor. Aldridge received the letter and the invoice, and ''made no reply thereto and expressed no objection to the manner and mode of shipment.'' On December 18, 1945, the goods not having arrived, Aldridge wrote Powell undertaking to cancel the contract, sending the Express Agent at Durant a copy of the letter. The shipment arrived at Durant ''after'' January 17, 1946, and was immediately transported by the Express Company from Durant to Greenwood, January 22, 1946. Aldridge refused to accept the shipment and the merchandise is now at Greenwood, subject to acceptance by Aldridge.

Ordinarily ''A delivery of goods to a carrier on a sale f. o. b. at the place of shipment is a delivery to the buyer. It is also well-established that if the buyer directs the goods to be sent to him by carrier without designating

any particular carrier, a delivery to the carrier selected by the seller, if proper care is used in his selection, is a delivery to the buyer to the same extent as though the buyer had himself selected the carrier." 46 A. J. 348, Section 172. In the Note appearing in 101 A. L. R. 292, the annotator states the rule to be that "Where the contract provides for a sale f. o. b. the point of shipment, the title is generally held to pass, in the absence of a contrary intention between the parties, at the time of the delivery of the goods for shipment at the point designated." The same rule is announced in Planters Oil Mill & Mfg. Company v. Falls et al., (Miss.), 29 So. 786. See also Sethness Company v. Home Ade Bottling Company et al., 111 Miss. 151, 71 So. 308. Both parties admit this to be the general rule, but Aldridge says the facts of this case constitute an exception to that rule for these reasons:

(1) The fact that Powell prepaid the freight from Griffin, Georgia, to Durant, Mississippi, was proof of the intention of the seller to assume the duty of delivering the goods to Aldridge at Greenwood. He invokes the rule "A payment of freight by the seller is, however, evidence to show that the seller assumed the duty of delivering at the point of destination, and will prevent if such is the case, the delivery to the carrier from being considered a delivery to the buyer." While prepayment of the freight is evidence to show that the seller assumed the duty of delivery, such prepayment does not necessarily show that fact. "If the place of shipment is the place where, under the terms of the contract, delivery is to be made to the buyer, the fact that on delivery to the carrier the seller pays or guarantees the freight will not prevent the delivery from constituting a delivery to the buyer." 46 Am. Jur. 352, Section 176. The stipulation of facts sets out that Aldridge "should pay to the carrier the cost of shipping the merchandise from Griffin, Georgia, to Greenwood, Mississippi." The stipulation further recites that Powell prepaid the charges from Griffin to Durant ''for the defendants.'' In addition to this, Powell wrote

Aldridge that he had prepaid this freight and included it in his invoice as a charge against Aldridge, who made no objection because of such payment. Furthermore, the contract provided for delivery by Powell to the carrier, F. O. B. Griffin.

(2) Aldridge further says the delivery in this case was not a delivery to him because the bill of lading consigned the goods to the Railway Express Company at Durant and not to Aldridge. The bill of lading, while naming the Railway Express Agency, also contains this notation: "Please forward to Aldridge Co., Greenwood, Miss." Before the shipment was made Powell had conferred with the railway agents and the plan of shipment had been worked out and agreed upon, and it was the intention of the parties that the Express Agency was to immediately transport the goods from Durant to Greenwood. This was the only power or interest vested in the Express Agency as to the property. Powell, on the day of the delivery to the motor company at Griffin, wrote the Express Agency explaining the situation, outlining that its duty was only one of transportation, and the Express Agency undertook to perform that duty. And, as a matter of fact, it did actually perform the duty of such transportation and delivered the merchandise at Greenwood. Powell, on the day of shipment, forwarded to the Express Agency addressed labels to be placed upon the shipment from Durant to Greenwood. Looking through the form to the substance, and to the real intention of the parties, and the undertakings which they assumed, it is clear that this was a consignment of the goods to Aldridge and that such consignment vested in the Express Agency no right or interest whatever in the property except the duty of a carrier to further transport the property upon the delivery thereof to it.

Aldridge says that under the circumstances, he did not have the right to sue either carrier for the delay in transportation. We have said that we think the real consignee under the peculiar facts of this case was Ald-

ridge. Both the motor company and the express company knew all of the facts in advance, and they advised this method of shipment. They knew the real consignee was the Aldridge Company. Powell sent Aldridge an invoice for the purchase price of the goods, showing conclusively that Aldridge had purchased the goods on account and that title thereto had vested in Aldridge. "According to the rule prevailing in most jurisdictions, where a person has possession of, and a special property in, goods, it seems that he may maintain an action against a common carrier for their loss, whether some other person has an interest in them or not, and, in such a case, it appears to be beyond question that a recovery by one such person will bar another action for the same cause. The provisions of the Interstate Commerce Act [49 U. S. C. A. Sec. 1 et seq.] authorizing an action by the holder of a negotiable or order bill of lading do not deprive the owner of the property of his right of action for damages for the loss or injury of the property." 9 Am. Jur. 932, Section 822. This was a straight bill of lading. In such case, the carrier is liable to the owner of the goods covered by such bill subject to existing rights of stoppage in transit. Title 49 U. S. C. A. Sec. 102.

(3) Aldridge seems to take the position that the shipper could not select two carriers. We know from common knowledge that it often happens that the shipper deals only with the initial carrier, and such initial carrier selects the subsequent carriers to finally deliver the goods. No convincing reason is given why the shipper could not in advance select the final carrier, especially where that is done, as here, with the knowledge and consent of all of the carriers. In addition to this, it is agreed Powell was vested with the duty and power to select the method of transportation. The only restriction on that power was the duty of the seller to use proper care in the selection. It is shown in this case that the shipper exercised the utmost good faith and used reasonable and proper care and precaution to protect the interest of the buyer. He

thoroughly investigated the available methods of transportation, having in mind speed and economy in such transportation. He was assured that the method selected would result in a speedy delivery of the goods to its destination. The fact that the motor freight from Griffin, Georgia, to Durant, Mississippi, was only $10.06 indicates that the charge for transportation under the method selected was small. It might be added finally, in considering the contention that the shipper could not initially select two carriers, that the delay in transportation was with the initial carrier. It is not claimed the second carrier was negligent, therefore Aldridge suffered no injury because it was selected to make final delivery.

Reversed and judgment here for appellant Powell in the sum of $628.81, with interest thereon at 6% per annum from December 1, 1945.