Callahan, J.
(dissenting). The plaintiff appeals from an adverse judgment in an action to recover the purchase price of goods sold to the defendant pursuant to the terms of a written contract.
On October 3, 1946, the parties contracted for the sale of a quantity.of cotton yarn under a letter agreement reading as follows:
“We [the plaintiff] are very glad indeed to inform you [the defendant] that we were able to ask the mill to make prompt shipments to you of approximately 3,000 pounds of 135 denier underwear twist on cones, dull, natural as per sample reeling submitted to you; on terms of $2,026 net cash on receipt of merchandise at:
Associated Lace Corp.
2500 Summit Avenue,
Union City, New Jersey
“We are quite certain that the mill will not fail us and should we hear anything to the contrary, we shall immediately communicate to you any information we receive, in order that you be not mislead [sic].
“ Kindly sign and return to us carbon copy where indicated, to signify your agreement to the above.”
The plaintiff was already under contract for the purchase of the goods from the Green Kiver Mills in North Carolina at a price that included freight charges or cost of transportation. In fact, a part of the merchandise was in transit to the plaintiff at the time of entering into the contract aforesaid, but was rerouted to the defendant. We are not concerned with this portion of the goods, which was received and accepted, and the price paid by the buyer.
On October 7, 1946, the mill, pursuant to instructions from the plaintiff, delivered the balance of the goods to a common carrier for transportation to the defendant. The goods were shipped freight prepaid and consigned to the defendant under a uniform straight bill of lading, which the mill forwarded directly to the defendant. On or about October 14, 1946, the plaintiff invoiced the defendant for the shipment covered by the bill of lading.
However, there was a delay in the delivery of the goods caused by a trucking strike in the New York metropolitan area, where the defendant was located and had its place of business. On November 19, 1946, the defendant notified the plaintiff that it *702 would not accept the shipment because of such delay. The plaintiff refused to acquiesce in this repudiation of the contract. When the goods thereafter arrived in or about the early part of December, 1946, a tender of delivery was made by the carrier and rejected by the defendant.
. It should be noted that at the time of making the contract in suit the .parties were fully aware of the existence of the trucking strike, which had been continuing for over a month. Nevertheless, the contract contained no provision with respect to delays in delivery by reason of such strike.
On a prior appeal this court reversed a summary judgment in favor of the plaintiff and directed a trial for fuller development of the facts relating to the question of whether title to the goods had passed to the buyer on shipment. We indicated that one factor bearing on this question would be the arrangement for payment of the freight (see Donner v. Associated Lace Corp., 276 App. Div. 952). On this aspect of the case the trial court has found that the obligation to pay freight charges was not discussed between the parties and is without particular significance. However, the fact that the goods were shipped freight prepaid was said to fortify the conclusion that title did not pass to the defendant on delivery to the carrier. It was held that the intention of the parties was not to pass title to the buyer until receipt of the goods at the address designated in the contract, so. that responsibility for the delay in delivery rested with the plaintiff.
On this appeal the sole question is whether the property in the goods passed to the defendant on delivery by the mill to the carrier. In such case the plaintiff would not bear the risk of delay in transit and is entitled to recover the price of the goods (see Kemper-Thomas Co. v. Deitz, 204 Mich. 84). Where the property in the goods has passed to the buyer, the seller may maintain an action for the price on wrongful refusal of the buyer to pay for the goods according to the terms of the contract (Personal Property Law, § 144, subd. 1). Where the property in the goods has passed on shipment, the buyer’s repudiation or cancellation of the contract thereafter is ineffective to defeat the seller’s right to the price.
Thus far the defendant has successfully contended that the contract provision for “ net cash on receipt of merchandise ” at the buyer’s place of business indicates an intention not to transfer the property in the goods until delivery at such address. Of course, the transfer of title or property in the goods is *703 always one of intent to be determined as a question of fact in each case. However, the parties to the contract in suit did not expressly declare or manifest their intention as to when the buyer was to acquire the property in the goods. On this record it is unmistakable that the parties as ordinary businessmen never consciously adverted to the question which of them had the property in the goods, or when it was to be transferred from one to the other. Where, as here, the intention of the parties is not apparent, it is necessary to resort to the statutory rules of presumption for the purpose of ascertaining the same (Personal Property Law, § 100).
As the parties seem to agree, the provisions of the statute relevant to a decision in this case on the question as to when the title or property in the goods passed t.o the buyer are as follows :
“ § 100. Rules for ascertaining intention. Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer. * * *
“ Buie 4. 1. Where there is a contract to sell unascertained or future goods by description, and goods of that description and in a deliverable state are unconditionally appropriated to the contract, either by the seller with the assent of the buyer, or by the buyer with the assent of the seller, the property in the goods thereupon passes to the buyer. Such assent may be expressed or implied, and may be given either before or after the appropriation is made.
“ 2. Where, in pursuance of a contract to sell, the seller delivers the goods to the buyer, or to a carrier or other bailee (whether named by the buyer or not) for the purpose of transmission to or holding for the buyer, he is presumed to have unconditionally appropriated the goods to the contract, except in the cases provided for in the next rule and in section one hundred and one. This presumption is applicable, although by the terms of the contract the buyer is to pay the price before receiving delivery of the goods, and the goods are marked with the words “ collect on delivery ” or their equivalents.
“ Buie 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon. ’ ’
In my opinion the plaintiff’s performance of the contract was complete on delivery of the goods to the carrier for the *704 purpose of transmission to the buyer. This is deemed to be delivery to the buyer in the absence of a contrary intent, or unless the situation is governed by rule 5 aforesaid (Personal Property Law, § 127, subd. 1). However, I am unable to agree with the defendant’s contention and the finding of the trial court to the effect that this case falls within the provisions of rule 5. The contract in suit did not require the seller to deliver the goods to the buyer or at a particular place. It only called upon the seller to ship or send the goods to the buyer, and no more. In plain words the plaintiff simply obligated himself to arrange for “ prompt shipments ” of the merchandise. This ordinarily means delivery to a carrier for the purpose of transportation to the buyer (Ledon v. Havemeyer, 121 N. Y. 179, 186). Neither does the contract require the seller to pay the freight to the buyer or a particular destination. In fact, the record discloses that the seller did not pay such charges, but the seller’s mill paid the same as part of the contract or transaction between it and the plaintiff. Accordingly, it would seem that this case is controlled by rule 4 rather than rule 5 of the statute.
Furthermore, though prepayment of freight may be evidence to show that the seller assumes the duty of delivery so as to preclude delivery to the carrier from operating as a delivery of the goods to the buyer, such prepayment is not conclusive and does not necessarily establish the fact that delivery was to be at the place of destination (see Seaver v. Lindsay Light Co., 111 Misc. 553, 556, revd. 196 App. Div. 397, but affd. 233 N. Y. 273; Dannemiller v. Kirkpatrick, 201 Pa. 218, 224, 225; McLaughlin v. Marston, 78 Wis. 670, 677, 678). The seller’s prepayment of the freight, where not required by the contract, does not prevent the passing of title on shipment, so that recovery of the price may be permitted despite the buyer’s rejection of the goods for delayed delivery (see Kemper-Thomas v. Deitz, supra; Powell v. Aldridge, 202 Miss. 648; see, also, People v. Western Picture Frame Co., 368 Ill. 336). This is particularly true in the present case, and the prepayment of the freight to the buyer loses significance as an evidentiary factor to show that the seller assumed the duty of making delivery of the goods at destination. In this connection the uncontradicted testimony on behalf of the plaintiff is that he did not undertake delivery to the buyer at the latter’s place of business, that he regarded the goods as the property of the buyer on shipment and considered himself entitled to the price, for which the defendant was promptly invoiced. The fact that the goods were forwarded *705 under a uniform straight bill of lading naming the buyer as consignee is also strong evidence of an intention to pass title on shipment.
While the defendant stresses the contract provision for ‘ ‘ net cash on receipt of merchandise ” at the buyer’s place of business as requiring the seller to make delivery of the goods at such place, this was clearly a price term of the contract fixing the time of payment. This provision of the agreement had no more effect on the passing of the property in the goods than would a provision for payment of the price ten days after receipt of the merchandise. Though the actual receipt of the goods by the buyer might never occur, the defendant would still be liable for the price, and in such event the law would imply a promise to pay within a reasonable time (see Fragano v. Long, 4 Barn. & Cr. 219).
The judgment appealed from should be reversed, with costs to the appellant, and judgment awarded in favor of the plaintiff for the purchase price of the goods.
Peck, P. J., G-lennon, Van Voorhis and Shientag, JJ., concur in Per Curiam opinion; Callahan, J., dissents and votes to reverse, in opinion.
Judgment affirmed, with costs.