(174 App. Div. 337)

MILLER v. STEINFELD et al.

(Supreme Court, Appellate Division, Third Department. September 13, 1916.)

1. NEGLIGENCE ⬥136(25)—ACTIONS—JURY QUESTION.

In an action against defendants, whose name appeared on a stepladder which broke, causing injury to plaintiff, the question whether the ladder broke by reason of defective materials and workmanship, or improper use, *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 326–332; Dec. Dig. ⬥136(25).]

2. NEGLIGENCE ⬥134(2)—EVIDENCE—EFFECT OF TRADE-MARK—MANUFACTURE—"TRADE-MARKS."

In view of Penal Law (Consol. Laws, c. 40) § 2350, defining a "trade-mark" as a mark used to indicate the maker, owner, or seller of an article of merchandise, including, among other things, any name of a person or corporation, or any name, device, or emblem usually affixed to denote that it was imported, manufactured, produced, or sold by him, the fact that defendants' name appeared on a stepladder sold by them does not establish that they were the manufacturers of the ladder, for a trade-mark is just as consistent with the fact that they were jobbers thereof.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 272; Dec. Dig. ⬥134(2).

For other definitions, see Words and Phrases, First and Second Series, Trade-Marks.]

3. NEGLIGENCE ⬥27—MANUFACTURER—TESTS.

A manufacturer of goods, such as a stepladder, is bound to test them before putting them on the market, and where he fails to do so, and the ladder breaks by reason of defects, causing injuries to ultimate purchasers, such purchasers may recover.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 25; Dec. Dig. ⬥27.]

4. NEGLIGENCE ⬥134(11)—ACTIONS—SURMISE.

Where plaintiff was injured by the breaking of a stepladder, which defendants had either manufactured or sold as jobbers, plaintiff must, before recovery can be had, establish defendants' negligence as the proximate cause of the injury, and evidence raising a mere conjecture is insufficient.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 273; Dec. Dig. ⬥134(11).]

5. NEGLIGENCE ⬥27—JOBBERS—INSPECTION.

Where jobbers make a reasonable inspection of stepladders before disposing of them to retailers for sale to the trade, they are not guilty of negligence, rendering them liable to an ultimate purchaser injured by the breaking of a ladder.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 25; Dec. Dig. ⬥27.]

6. NEGLIGENCE ⬥121(2)—RES IPSA LOQUITUR.

Defendants sold stepladders to a retailer, and one of them was purchased by plaintiff. In using the ladder, it broke, and plaintiff received a fall. It did not appear whether the ladder broke by reason of defects, or plaintiff's improper use. *Held* that, there being no showing that defendants were more than jobbers, or that no inspection had been made of such ladders, they could not be held liable under the doctrine of res ipsa loquitur.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 218, 225, 271; Dec. Dig. ⬥121(2).]

Appeal from Trial Term, Saratoga County.

Action by Rhoda N. Miller against Samuel Steinfeld and Leo Steinfeld, as copartners doing business as Steinfeld Bros. From a judgment for defendants, and an order denying a new trial, plaintiff appeals. Affirmed.

Argued before KELLOGG, P. J., and LYON, HOWARD, WOODWARD, and COCHRANE, JJ.

Leary & Fullerton, of Saratoga Springs (James A. Leary, of Saratoga Springs, of counsel), for appellant.

Ivins, Wolff & Hoguet, of New York City (Henry F. Wolff and Robert Louis Hoguet, both of New York City, of counsel), for respondents.

LYON, J. The plaintiff was seriously injured by falling from a stepladder. It was of a construction commonly known as a stepladder chair, and bore the words, "Trade-Mark, Steinfeld." Two pieces of wood joined together by a hinge at each end formed the seat, permitting the back portion of the chair to be turned over on the front portion, creating a form of stepladder in common use. The defendants were dealers in toys and furniture specialties on Broadway in the city of New York. The chair was undoubtedly one of a half dozen bought of the defendants by Bickley Bros., who conducted a house furnishing store at Glens Falls, N. Y. The chair was bought of Bickley Bros. by plaintiff's daughter, and sent by her as a present to the plaintiff at Ballston Spa.

[1] The plaintiff testified that while standing upon the third step of the ladder, about to engage in washing a window, she fell to the floor and was injured. Following her fall the plaintiff claims that the ladder was found to have come in two by the drawing out of nails and of the screws which held the hinges to the back portion of the ladder. The plaintiff claimed that this caused the ladder to collapse. The defendants claimed that the plaintiff's fall was caused, and the hinges thereby disconnected, by the plaintiff having leaned so far out from the ladder as to place the center of gravity outside the base line of the chair. In demonstration of their theory, the defendants caused a man, in the presence of the jury, to mount the ladder and stand upon the third step with the hinges disconnected. Whether the plaintiff's fall resulted from her having leaned too far out from the ladder, or from the collapsing of the ladder by reason of the insufficient attachment of the hinges, was fairly a question of fact for the jury. At the close of the evidence the plaintiff was allowed to amend her complaint by adding the allegation that the defendants were jobbers and sellers of stepladders, as well as manufacturers thereof, as theretofore alleged. At the close of the plaintiff's evidence the defendants rested their case. Following the charge, the jury rendered a verdict of no cause of action.

[2, 3] The plaintiff's grievances, as stated in the brief of her counsel, are twofold: That the court erred in refusing to charge the jury that the defendants were the manufacturers of the ladder, and also erred in refusing to apply the rule of res ipsa loquitur. At the conclu-

160 N.Y.S.—51

sion of the charge, plaintiff's counsel took an exception to the statement of the court that there was no proof in the case that the defendants were the manufacturers of the ladder. The plaintiff had alleged in her complaint upon information and belief that the defendants were the manufacturers. The answer, verified by one of the defendants, positively denied that this was so. A careful reading of the record discloses nothing supporting plaintiff's allegation, nor does the plaintiff's brief point out any evidence whatever to that effect, except as the brief claims that the words "Trade-Mark, Steinfeld," upon the ladder, indicated that the defendants were the manufacturers. The presence of the trade-mark, however, was equally consistent with the conclusion that the defendants were mere jobbers or sellers of these chairs.

" 'A trade-mark' is a mark used to indicate the maker, owner or seller of an article of merchandise, and includes among other things any name of a person * * * usually affixed to an article of merchandise to denote that the same was imported, manufactured, produced, sold * * * by him." Penal Law N. Y. § 2350. "In the strict sense of the term, a trade-mark is applicable only to a vendible article upon which it is in some manner affixed or represented as a symbol to indicate the origin or ownership of the article on which it is placed." Koehler v. Sanders, 122 N. Y. 65, 72, 25 N. E. 235, 236 (9 L. R. A. 576). The definition generally adopted by the later decisions is that the term "trade-mark" means "a distinctive mark of authenticity, through which the products of particular manufacturers or the vendible commodities of particular merchants may be distinguished from those of others." Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 665, 673, 21 Sup. Ct. 270, 273 (45 L. Ed. 365); Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U. S. 446, 31 Sup. Ct. 456, 55 L. Ed. 536.

The burden of proving that the defendants were the manufacturers of the ladder was upon the plaintiff. As the trade-mark might indicate with equal force that the defendants were the manufacturers or the jobbers, or the sellers of the ladder, it was incumbent upon the plaintiff to offer evidence tending to show that the defendants were the manufacturers of the ladder before she could claim that the presence of the trade-mark was proof to that effect. Unquestionably the ruling of the court that there was no proof in the case that the defendants were the manufacturers of the ladder was an important ruling, as the liability of the manufacturer of a ladder is much greater than that of a jobber or seller. The manufacturer is presumably acquainted with the method of its manufacture. Undoubtedly a person holding himself out to be the manufacturer is liable to a purchaser to the same extent as the actual manufacturer would be had the purchase been made from him. Willson v. Faxon, Williams & Faxon, 208 N. Y. 108, 101 N. E. 799, 47 L. R. A. (N. S.) 693, Ann. Cas. 1914D, 49; Junkermann v. Tilyou R. Co., 213 N. Y. 404, 108 N. E. 190, L. R. A. 1915F, 700.

The fact that the bill for the half dozen chairs sold by the defendants to Bickley Bros. stated that the chairs were shipped to Bickley Bros. from Walton, N. Y., would not tend to indicate that the defendants were the manufacturers of the chairs. Plaintiff's counsel were unquestionably familiar with the decision in MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050, Ann. Cas. 1916C,

440, holding that the manufacturer of an automobile was responsible for the finished product, and was not at liberty to put that product upon the market without subjecting the component parts to ordinary and simple tests, and doubtless they fully appreciated the importance of proving that the defendants were the manufacturers of the ladder, if such were the fact. Although plaintiff's counsel were advised by the service of the verified answer several months before the case came to trial that the defendants claimed that they were not the manufacturers of the ladder; and while it would seem to have been within their power to establish definitely whether or not the defendants were the manufacturers of the chair, yet they did not see fit to call any witness from either defendants' place of business in New York City, or from Walton, to testify where or by whom the chair was manufactured. Nor did the plaintiff suggest any reason for the absence of such witnesses. We think the statement of the court that there was no proof in the case that the defendants were the manufacturers of the ladder was fully warranted.

[4-6] As to the doctrine of res ipsa loquitur: The court at defendants' request instructed the jury that the mere breaking of the ladder did not render the defendants liable, to which instruction the plaintiff excepted. We think the court committed no error in this respect. The plaintiff was bound to prove facts from which it might fairly be inferred that the defendants' negligence was the proximate cause of the injury. Mere surmise or conjecture would not do. Bruckel v. Milhau's Sons, 116 App. Div. 832, 835, 102 N. Y. Supp. 395, citing Shearman & Redfield on Negligence (5th Ed.) § 57. The ladder was plainly a cheap affair, made of chestnut, not painted, varnished, or oiled. It was sold by defendants to Bickley Bros., at the rate of $9 per dozen, and by the latter to plaintiff's daughter for $1.25. One of the defendants testified that they had dealt in the ladders for six years, had sold numbers of them, and never before knew of any parting or breaking of any of them. Concededly at the time of the accident the ladder was in the possession and under the sole control of the plaintiff, and perhaps being so negligently used by her as to be the sole cause of her fall and injury.

"The causative force of the injury must be shown to be controlled by the defendant; it must also appear that there was no other equally efficient proximate cause. * * * The most frequent application of the doctrine, as stated, is to passenger cases, because the passenger of necessity passively submits himself to be acted upon by forces exclusively under the carrier's control. The derailment of a train by which the passenger is injured is generally considered a typical case of res ipsa." Shearman & Redfield on Neg. (6th Ed.) § 58b. "This is the doctrine of res ipsa loquitur, and it is not applied unless the thing causing the accident is under the control of the defendant or his servants." Thompson on Negligence, § 7635, citing Lennon v. Rawitzer, 57 Conn. 583, 19 Atl. 334.

It appears probable from the evidence that the plaintiff did not know just how the accident happened. The fact that upon the trial of the action a man mounted the disconnected ladder and stood upon the third step would strongly indicate that the fall resulted from the

plaintiff having leaned too far out from the ladder, and hence was brought about in part at least by the plaintiff's own negligence. As such may have been the fact, and the verdict indicates that the jury may have so found, the trial court had not the right, under the circumstances, to say that presumptively the fall resulted solely from the negligence of the defendants in failing to properly inspect the ladder. That, too, in face of the fact that there is no proof that the defendants did not use reasonable care in making inspection. Such an instruction would have been grossly improper, had the accident happened solely by reason of the plaintiff's negligence in leaning too far over the ladder. This the jury had the right to find from the evidence.

Mere proof that the accident happened and plaintiff suffered injury was not of itself sufficient to render the doctrine of res ipsa loquitur applicable. The plaintiff was obliged first to show facts and circumstances establishing negligence upon the part of the defendants, or from which the inference of negligence might properly be drawn. Marceau v. Rutland R. R. Co., 211 N. Y. 203, 206, 105 N. E. 206, 51 L. R. A. (N. S.) 1221, Ann. Cas. 1915C, 511. The negligence, if any existed, upon the part of the defendants as jobbers or sellers of the ladder, was the failure to make proper inspection. There was no evidence that the defendants did not use reasonable care in having the ladder inspected by a competent person before it left Walton. The alleged defects were not so obvious that their existence implied absence of inspection. The proof shows that the ladder was inspected by Bickley Bros. when received by them from defendants, and before being placed in stock, and that it was also inspected by plaintiff's husband when it reached plaintiff's home, and that neither inspection revealed any defect. Evidently the jury believed that the defects in the ladder, if they in fact existed, were not discoverable in the exercise of reasonable care of inspection, and that the fact that the defects were not discovered did not prove that reasonable inspection had not been made by the defendants. If reasonable inspection were in fact made by defendants, and the alleged defect not discovered, then there was no negligence upon the part of the defendants as jobbers or sellers, and there was nothing upon which the doctrine of res ipsa loquitur could apply.

Furthermore, a full trial of the issues was had, at which all the witnesses were before the jury. The plaintiff makes no complaint of rulings as to the admission or exclusion of evidence. The charge was clear and comprehensive. The court submitted to the jury the questions as to whether the ladder was defective; if so, whether it was obviously defective; whether the defendants as jobbers or dealers failed under the circumstances to exercise reasonable care of inspection; and whether the plaintiff was chargeable with contributory negligence. The court instructed the jury that, if they should conclude from the evidence that the defendants did not exercise reasonable care under the circumstances; that the defendants ought not to have passed this ladder, ought not to have sold it, or transmitted it to the retail dealer, then the defendants were negligent; and if the jury

should find the plaintiff free from contributory negligence, the jury could find that the plaintiff was entitled to recover in the case. A jury of plaintiff's own county found a verdict in favor of the defendants.

The judgment and order appealed from should be affirmed. All concur; KELLOGG, P. J., and HOWARD, J., in result.