JOHN STASIUKIEWICZ, Respondent, *v.* MARCUS CONTRACTING Co., INC., Appellant.

First Department, December 28, 1928.

*Meyer M. Brown* of counsel [*Joseph Rubin*, attorney], for the appellant.

*Edgar J. Treacy*, for the respondent.

MERRELL, J.  Plaintiff was an employee of a subcontractor engaged in doing the cement work in the erection of a twenty-story

building at the northeast corner of Twenty-sixth street and Eighth avenue in New York city. It is claimed that the plaintiff fell and received injuries from the giving way of an overhead bridge constructed by the defendant over the sidewalk in connection with the erection of said building. The defendant, appellant, entered into a contract with the 26th Street and Eighth Avenue Corporation for the performance of the necessary work in excavating for the building, and also for the construction of the overhead bridge in question, which the defendant, appellant, contracted to erect and to leave until notified to remove after the completion of the building. The testimony of the defendant was to the effect that prior to suit it received no notice of the injuries which the plaintiff claims to have sustained. In his complaint the plaintiff alleges that the bridge or passageway erected by the defendant was insufficiently constructed or maintained so that the same was in a defective and dangerous condition and out of repair. The bridge from which the plaintiff claims to have fallen was completed on October 9, 1925. Plaintiff claims to have received his injuries on December 7, 1925, or approximately two months after the completion of the bridge. Plaintiff testified that on December 7, 1925, he was in the employ of one Petrovsky, who was a subcontractor engaged in the concrete work in the building and in the laying of the concrete floors thereof, and that on the day in question his employer's foreman directed him to go upon the bridge and procure a plank among several lying thereon and take the same to the Petrovsky workmen who were building another bridge or runway in connection with their work. Plaintiff testified that as he was walking on the planks one of them gave way under him, and that he caught another plank and with it was precipitated into the building and fell to the ground, a distance of about a floor and a half. Plaintiff was taken to Bellevue Hospital, where he remained one week. He testifies that he was incapacitated for work for about four months. Plaintiff's medical testimony was to the effect that he had sustained a fracture of the clavicle and a five to ten per cent loss of the use of his shoulder. But one eye witness to the accident, Michael Brisik, testified in plaintiff's behalf. This witness, a friend of the plaintiff, testified that as the plaintiff went upon the bridge one of the planks gave way and the plaintiff fell, catching another plank. This witness was unable to state whether one of the planks upon which the plaintiff was walking broke, but testified that after the accident he saw that two of the planks were tilted. This witness testified that the plank from which the plaintiff fell was lying loosely on the bridge, and that there were lots of other loose planks on the bridge besides the particular

plank that fell with plaintiff. He testified that after the accident, on "looking upward I saw there where the planks were before," and that "there was a space afterwards."

On the part of defendant, its president testified as to the defendant doing the excavating for the foundation and the erection of the overhead bridge from which the plaintiff claimed to have fallen; that the bridge was constructed of eight by eight inch upright timbers, about twelve feet above the curb, with three by twelve inch cross beams, and two by ten inch planks running parallel with the street; that the bridge was about fifteen or sixteen feet in width, and that all of the planks on top of the bridge were nailed. The foreman shorer, in the employ of the defendant, testified that he was present and supervised the erection of the bridge, and that the structure was put up of eight by eight inch uprights with three by twelve inch cross beams and then decked down with two by ten inch planks all nailed down together, covering the bridge, and that there were no holes when he left the work; that he inspected it upon completion and found no defects.

The evidence discloses that from the time of the completion of the bridge on October 9, 1925, the defendant was not present, nor did it have any custody or control of the structure, the same being entirely within the control of the contractor engaged in the erection and completion of the building. Therefore, for an interval of two months prior to the time of the accident the defendant had no connection whatever with the erection of the building then in progress. There was no evidence that under the contract for the erection of the bridge the defendant was obliged to make any repairs. The evidence offered by plaintiff fails to clearly disclose the cause of the plaintiff's fall, as to whether it came from a defect in the bridge itself or whether the plaintiff fell from one of the planks lying loosely upon the bridge, as the testimony of plaintiff's witness Brisik would indicate. I am unable from the record to find any evidence showing any negligence on the part of the defendant. The undisputed testimony was to the effect that the bridge was properly constructed and left in a safe condition by defendant. If the planks of the bridge themselves gave way, it may well have been that the bridge became out of repair through the two months' use by contractors and workmen upon the building. While in plaintiff's bill of particulars it is alleged that the lateral boards were "insufficiently and improperly nailed and fastened," there was no evidence whatever given upon the trial to substantiate such claim. There was no evidence as to the number of nails found in the planks which it is claimed gave way, or, indeed, any evidence as to any facts whatever with reference to the nailing of the planks. There

was no evidence whatever to connect the alleged unsafe condition of the bridge at the time plaintiff fell with its condition at the time it was erected and turned over by the defendant to the owner of the building in course of erection. The case here is one of a person receiving injuries and being granted compensation therefor without the slightest proof that the defendant was in anywise responsible for the injuries. So far as I can discover there was not a scintilla of evidence showing any negligence on the part of defendant. The plaintiff, respondent, relies upon the doctrine of *res ipsa loquitur* in support of plaintiff's recovery. I do not think this case justifies the application of the *res ipsa loquitur* rule. The defendant at the time of the accident was not in control and operation of the instrumentality which the plaintiff alleges caused his injury. Two months before the accident the bridge had been turned over by the defendant to the owner of the building for whom it had erected the same. I know of no case where the rule of *res ipsa loquitur* has been applied where the agency producing the injury was not in the exclusive possession and control of the person charged with negligence. (See *Slater* v. *Barnes,* 241 N. Y. 284; *Miller* v. *Steinfeld,* 174 App. Div. 337.) In Shearman and Redfield on the Law of Negligence (6th ed. § 58-b) it is stated that in order to apply the doctrine of *res ipsa loquitur,* " The causative force of the injury must be shown to be controlled by the defendant; it must also appear that there was no other equally efficient proximate cause."

In Thompson on Negligence (§ 7635) it is said: " This is the doctrine of *res ipsa loquitur,* and it is not applied unless the thing causing the accident is under the control of the defendant or his servants."

The bridge in question was undoubtedly the property of the defendant. It was a bailor or lessor of the bridge for the use of the owner of the building. The defendant was not in the control or possession of the structure at the time of the accident. As before stated, the evidence fails to show that at the time the defendant completed the bridge and turned it over to the owner it was in anywise defective. The contract was that the defendant was to " construct overhead bridge and leave until notified to remove." There was no obligation on the part of the defendant to repair the bridge during its use. There was no evidence whatever offered on the part of the plaintiff to controvert the testimony of the defendant that the bridge was properly constructed and delivered by the defendant free of any structural defects. Even though it had been shown that there was some defect in the bridge itself at the time of the accident, which occurred approximately two months after defendant had completed the bridge and turned it over to the

owner of the premises, the defendant still would not be liable because it, as lessor or bailor, was out of possession and control at the time the accident occurred, and in the absence of any proof that at the time defendant gave up possession and control of the structure to the owner, it was unsafe. (*Haigh* v. *Edelmeyer & Morgan Hod Elevator Co.*, 123 App. Div. 376.)

I think the plaintiff failed to prove any cause of action against the defendant, and that the trial court erred in denying the motion of the defendant for a nonsuit and dismissal of the complaint made at the close of plaintiff's case and renewed at the close of the evidence.

The judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

DOWLING, P. J., FINCH, McAVOY and PROSKAUER, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.