**Lottie Kirk, Plaintiff-Appellant, v. Stineway Drug Store Company, Defendant-Appellee.**

Gen. No. 48,683.

First District, Third Division.

January 9, 1963.

Rehearing denied January 31, 1963.

John G. Phillips and Norman Peters, of Chicago (John G. Phillips, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (Oswell G. Treadway, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a judgment on a directed verdict entered in favor of defendant at the close of plaintiff's evidence in a suit for personal injuries sustained as a result of a fall from a household stepladder purchased from defendant. The trial court directed a verdict on both counts of the complaint.

Count I alleged a breach of implied warranties of fitness for use and merchantability, as prescribed by the Sales Act (Ill Rev Stats 1961, c 121½, § 15). Count II was based on common law negligence in the sale of a defective stepladder.

██ ██ A motion for a directed verdict presents a single question—whether there is in the record any evidence which, standing alone and taken with all intendments most favorable to the party resisting the motion, tends to prove the material elements of a case. This principle has been so frequently stated, there is no need to cite cases in support of it. We cannot consider contradictions or inconsistencies in the testimony. So examined, the following are the essential facts.

On April 28, 1960, plaintiff, a 67-year-old woman, was in the process of moving and had need of a stepladder. She entered one of the stores of defendant and asked a salesclerk whether they had any small ladders. He solicited the help of another clerk and one of them went to see if they had such a ladder in the stockroom. Some time thereafter one of the clerks came to plaintiff with an open carton and pulled out of it approximately one-third of a red and white metal stepladder, the color plaintiff had said she wanted. Plaintiff said it was satisfactory, bought it and took it home, keeping it in the carton until she moved. On May 5, 1960, having moved, she used the ladder twice, without incident. On the third instance the ladder collapsed and plaintiff fell. It is apparent from an examination of the ladder, which was placed in evidence and is part of the record, that there are imperfections in its construction, which the trial court described as follows:

> "The condition in this case indicates that the rivet hole's loose because it is not hooking that step now, but in that point where it is not hooking that step, there is no safety cleat hook on

that and that is the only one missing; so they apparently failed to put the safety cleat on there."

Trial counsel for defendant said: "The rivet broke, that's what caused the step to give away." In addition, there were other apparent defects.

Considering, first, Count I based on breach of warranties, the relevant portions of the Sales Act relied on are as follows:

> "(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is [an] implied warranty that the goods shall be reasonably fit for such purpose.
>
> "(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality.
>
> "(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such an examination ought to have revealed." (Ill Rev Stats (1961), c 121½, § 15(1) (2)(3).)

The factual requirements of an implied warranty of fitness for a particular purpose are that the buyer makes known to the seller the purpose for which an article was purchased and that it appears that he relied on the seller's skill or judgment. Plaintiff did not expressly state to the seller the precise purpose for which she purchased the ladder. However, a stepladder is purchased for the purpose of elevating a person in order that he may perform a task or reach an object. As the trial court said, it might be used

421

for the purpose of a flowerpot stand, but certainly no one would buy it for such purpose. The degree of particularity which should be required in such a case is dependent on the nature of the article and its general purpose. A household ladder is in **particularity** a ladder to be used for a purpose within the house. That purpose must be considered to have been impliedly made known to the seller by the very nature of the article and by the circumstances surrounding the transaction. In Stonebrink v. Highland Motors, Inc., 171 Ore 415, 137 P2d 986 (1943), the plaintiff had purchased a jack from the defendant. The court held that the seller knew the particular purpose, ". . . indeed the only purpose—for which the jack was purchased." In Ringstad v. I. Magnin & Co., 239 P2d 848 (Wash 1952), the language of the sales act was similar to that of the Illinois act. The court held that wearing apparel is acquired to be worn and that although the plaintiff did not explicitly so state, her purpose must have been known to the seller. In the instant case, the first requisite of plaintiff's case, that the seller knew the purpose for which the article had been sold, is sufficiently established.

 The next question is whether there was evidence to show that plaintiff here relied on the seller's skill or judgment. As to this there is no direct evidence. There seldom is when reliance is involved. The issue of reliance involves an inquiry into a state of mind. It cannot be proved by direct evidence, except as a witness might testify that he did so rely, and such testimony has been permitted. In Michaelson v. Hopkins, 228 P2d 759 (Wash 1951), the trier of facts received such testimony but held otherwise, as a jury might do in the instant case. Plaintiff in the case before us did not herself directly testify that she relied upon defendant. We consider better proof to be found by inferences drawn from circumstances sur-

rounding the transaction. Plaintiff testified that in her conversation with defendant's salesclerks she specified no requirements, except that the ladder should be a small one and that she wanted it to be red and white. She asked no questions as to its structure nor did she inspect it. She was 67 years old, as we have said, and used a ladder only in connection with her household requirements. The trial court apparently thought the evidence supported the conclusion that plaintiff relied upon defendant, saying: "I think under these circumstances where you have a woman of this age that undoubtedly has no training in mechanics she has to rely on the seller." There was adequate evidence on this point for submission of the issue to the jury.

██ ██ Defendant contends, however, that where a buyer *has an opportunity to inspect,* he cannot rely upon the skill or judgment of the seller. The statute (Ill Rev Stats (1961), c 121½, § 15(3)), supra, states that if the buyer *has examined* the goods, there is no implied warranty as regards defects which such an examination ought to have revealed. Defendant would therefore enlarge the language of the act by equating *opportunity to examine* with *examination* itself. Defendant cites Mayer v. Bar Steels Co., 340 Ill App 414, 91 NE2d 455 (Abst); Bansbach v. Allied Machine & Welding Co., 334 Ill App 76, 78 NE2d 344 (Abst); People v. Western Picture Frame Co., 368 Ill 336, 13 NE2d 958; McCormick v. Hoyt, 333 P2d 639 (Wash 1959). In the Mayer case the court found that there had in fact been inspection. In Bansbach v. Allied Machine & Welding Co., and in People v. Western Picture Frame Co., there had been inspection of some of the merchandise. In the McCormick case the court was dealing with a warranty of merchantability. What it said with respect to warranty of fitness for a particular purpose was dicta. There may be circum-

stances under which opportunity to examine could be equated with examination of the article itself, but that is not a proper condition to be applied in the case before us. It is our conclusion that the trial court erred in directing a verdict in favor of defendant on the issue of warranty of fitness for purpose, and we will proceed to consider whether there was a warranty of merchantability, also alleged in Count I.

▆▆▆▆ A warranty of merchantability has been defined as meaning "that the thing sold is reasonably fit for the general purpose for which it is manufactured and sold." Henningsen v. Bloomfield Motors, Inc., 161 A2d 69 (NJ 1960); Mead v. Coca Cola Bottling Co., 108 NE2d 757 (Mass 1952). It is applicable only when goods are bought by description from a seller who deals in such goods. It is not a sale by description when the goods are present and there is an opportunity to inspect. Grass v. Steinberg, 331 Ill App 378, 73 NE2d 331. In that case the buyer had an opportunity to and did inspect, but it is clear that the court would have found no warranty of merchantability if the buyer had the opportunity, but did not inspect. In Adams v. Peter Tramontin Motor Sales, Inc., 126 A2d 358 (NJ 1956), the court said (p 364):

> "The term sale by description strictly means an executory sale where the article is not present, but the term has been broadened to include all sales, whether or not the goods are present, where there is no adequate opportunity for inspection."

In the instant case plaintiff had an opportunity to inspect the ladder. It is our conclusion that plaintiff did not make a case for breach of warranty of merchantability.

▆▆▆▆ We have now to consider whether plaintiff has made a case on the common law negligence count. In such a case the plaintiff has to show that the defend-

424

ant owed her a duty in connection with the transaction; that it failed to perform that duty; that the injury sustained was the proximate result of that breach of duty; and that she, plaintiff, was free of contributory negligence. The question presented to us, therefore, involves the common law duty of a retail merchant who sells an article manufactured by a third person, which article is defective and causes injury to the purchser.

There appears to be only one case in Illinois, Miller v. Svenson, 189 Ill App 355 (1914), which can be considered as having a qualified bearing on the issue here involved. In that case the defendants were ladies tailors who sold, but did not manufacture, fur garments. A fur coat purchased by the plaintiff required alteration and was sent to a furrier for that purpose. On its return it was delivered to the plaintiff, who wore it and sustained a cut in the calf of her leg from a furrier's knife that lay near the bottom of the coat, between the lining and the fur. The Appellate Court found that the knife had been left in the upper portion of the coat during alteration and that it had worked its way down as the plaintiff wore the coat. The court concluded that the evidence did not show that the defendants' failure to find the knife concealed in the coat was caused by any failure on the defendants' part to use ordinary care, and that the defendants were not bound to anticipate and search for the unusual and unforeseen. The case thus left an area within which such a defendant could have been liable.

The distinction between the Miller case and the instant one is that the knife was concealed, whereas some, if not all, of the alleged defects of the ladder in the case before us could have been discovered by an examination of its exterior surface. The Miller case was not overruled, as plaintiff argues, by Mandel Bros. v. Mulvey, 230 Ill App 588 (1923). That was a case based on warranty, not on negligence. Other

cases cited by plaintiff on this point appear to have no direct bearing on the question of common law negligence of a retailer under such circumstances as existed in the instant case.

In other jurisdictions there are two lines of authority. The majority position is stated in Restatement, Torts, sec 402 (1948 Supp), at 716, as follows:

"A vendor of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not subject to liability for harm caused by the dangerous character or condition of the chattel even though he could have discovered it by an inspection or test of the chattel before selling it." [1]

The basis for this position and the Reporter's Comment is covered in a subjoined note.[2]

---

[1] See Sears, Roebuck & Co. v. Marhenke, 121 F2d 598 (9th Cir, 1941) where the court in regard to a hot water bottle said (p 600): ". . . a dealer who purchases and sells an article in common and general use . . . without knowledge of its dangerous qualities is not under duty to exercise ordinary care to discover whether it is dangerous or not. . . . Whether we assume that the defects could only be discovered by such investigations as were made by the experts, or could have been ascertained by the simple test of filling the bag with water and inverting it after the stopper had been screwed into its socket, the [defendant] . . . was under no obligation to make such inspection or test."

[2] "There is a clear distinction between the liability of a manufacturer and that of a vendor for harm caused by a chattel made by the former and sold by the latter. The manufacturer of a dangerously defective chattel is the creator of something which is foreseeably dangerous when it is used for the purpose for which it is manufactured. The constructing of the chattel defectively, with knowledge it is to be sent out to be used, is an unreasonably dangerous activity. On the other hand, the vendor who reasonably believes that the chattel he is selling is safe for use is not, in selling and delivering the chattel, doing anything which is foreseeably likely to cause harm. The slight risk inherent in the possibility the chattel may be defective is not sufficient to constitute an unreasonable risk. The burden on the vendor of requiring him to inspect chattels he reasonably believes to be free from hidden

426

What appears to be the latest text on the question is Frumer & Friedman, Products Liability, vol 1 (1961). At p 458, it agrees that:

"It is the majority view that a retailer who purchases from a reputable manufacturer and sells the product under circumstances where he is a mere conduit of the product is under no affirmative duty to inspect or test for a latent defect and, therefore, liability cannot be based on a failure to inspect or test in order to discover such defect and warn against it."

The minority position is that the retailer must exercise ordinary care and that ordinary care would include the duty to discover and disclose defects which may be found by inspection alone, distinguished from dangers so concealed that mechanical or chemical tests are needed to disclose them. See Santise v. Martins, Inc., 258 App Div 663, 17 NYS2d 741 (1940); Garvey v. A. I. Namm, 136 App Div 815, 121 NYS 442 (1910); Miller v. Steinfeld, 160 NYS 800 (1916).[3]

---

danger outweighs the magnitude of the risk that a particular chattel may be dangerously defective. . . . Negligence is determined in the light of the facts known to the actor." (Restatement, Torts, 1948 Supp, p 717.)

The Reporter, in commenting on the revision of the foregoing section, points out that there were 27 cases in 20 different Appellate courts in which vendors who sold defective chattels without inspection were held not to be liable for such injuries and only three cases in which they were held liable. The most recent cases are Meyer v. Rich's, Inc., 12 SE2d 123 (63 Ga App 896, 1940); Sears, Roebuck & Co. v. Marhenke, 112 F2d 598 (9th Cir, 1941) and Zesch v. Abrasive Co. of Philadelphia, 183 SW2d 140, 353 Mo 558, 156 ALR 469 (1944). We have examined these cases and find they support the principle.

[3] Some of the cases usually cited as supporting the majority position are cases in which the defect could be discovered only by mechanical or chemical tests and therefore these cases do not expressly disagree with the minority position. For example, in Levis v. Zapolitz, 178 A2d 44 (NJ 1962), the court, after stating

In Harper and James, The Law of Torts, Vol 2, § 28.29 n 7 (1956), the theory advanced in support of the minority position is stated as follows (p 1597):

". . . the retailer (where he has done nothing to aggravate the danger) can generally pass the burden of liability back to his supplier. Moreover he is better situated than is the consumer or other injured person to do this. And if these considerations are sufficient to justify the burden of strict liability within the magically capricious circle of privity, they certainly are enough to call for a high standard of care toward plaintiffs who are outside privity but well within the class of people likely to be hurt by the enterprise shared by the retailer and maker."

As we view it, the question which confronts the courts in our time, when the sale and usage of intricate mechanical products has assumed great volume, is to discover a rule which will be practical for the seller and at the same time protect the buying public. No

---

that the defect in the plastic slingshot which "allegedly brought about the break was internal and not one which could have been detected by visual inspection" held that "no liability existed on the part of the vendors for failure to make an inspection for latent defects." In Guyton v. S. H. Kress & Co., 5 SE2d 295 (SC 1939) the court said: "The delict she charges as constituting this absence of ordinary care is the defendant's failure to ascertain the dangerous elements of the article through a chemical analysis. . . . To require such a standard of care on the part of the dealers, in the absence of any facts reasonably calculated to place them on notice of the dangerous nature of the article, would be to impose upon them a burden that would be unreasonable." In Burgess v. Montgomery Ward & Co., 264 F2d 495 (Kan 1959), the court with regard to a stepladder, after finding that the defect's "existence could have been readily determined by a trained person but not by the untrained," held that "it is completely unreasonable to expect the shopkeeper to perform the inspection or test which would have revealed to an expert the defect in the ladder rail."

one can reasonably expect a vendor, if he is only a conduit for the distribution of goods, to inspect every article he sells. But there are articles which are inherently dangerous in themselves and others which, while not inherently dangerous, may become so by reason of a defective essential part. The seller should be required to exercise due care in the sale of the latter class of articles. Too great a burden would be placed upon him, however, if he were compelled to look for defects by special tests. We believe a fair rule to be applied in such a situation is that if the article, being defective, thereby becomes a dangerous instrument, the seller is required to discover such defects as may be discovered by reasonable inspection and to disclose such defects to the buyer. Applying the rule in the instant case, there is ample evidence to require submission of this issue to the jury.

██ The one question remaining is whether plaintiff was guilty of contributory negligence as a matter of law. Defendant contends that if the alleged defects were defects and if they were dangerous, it was plaintiff's duty in the exercise of ordinary care to discover the defects; that such a duty should not be placed upon defendant alone, and if this was plaintiff's duty, it is clear from her own evidence that she did not do so. While some, if not all, the defects were patent to a person having mechanical skill or understanding, there was still sufficient evidence on behalf of plaintiff to require submission of this issue to the jury.

The judgment is reversed and the cause is remanded with directions to grant plaintiff a new trial, and for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

DEMPSEY, P. J. and McCORMICK, J., concur.